DONOVAN N. STEVENS, Plaintiff-Appellant, v. CRYSTAL LAKE TRANSPORTATION SALES, INC., et al., Defendants-Appellees.

(No. 60750; )

First District (4th Division)—July 9, 1975.

Victor G. Savikas and James R. Levin, both of Friedman & Koven, of Chicago, for appellant.

Frank Cicero, Jr., and Roger L. Taylor, both of Kirkland & Ellis, of Chicago, for appellees.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from an order entered by the Circuit Court of Cook County granting defendants' motion for summary judgment. Plaintiff brought an action pursuant to section 13 of the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1973, ch. 121½, § 137.13) to rescind the sale of stock in Crystal Lake Transportation Sales, Inc. Plaintiff sought to rescind the sale on the grounds that the securities were not registered with the Illinois Secretary of State and were not properly qualified for any exemption from registration. The trial court granted defendants' motion for summary judgment.

The only issue presented on appeal is whether the trial court erred in granting summary judgment for defendants.

In July, 1967, the plaintiff, Donovan N. Stevens, was appointed general manager of Crystal Lake Truck Sales, Inc. (hereinafter referred to as Truck Sales), a truck dealership that sold International Harvester products. Plaintiff gradually assumed responsibility for supervision of the day-to-day operations of the dealership. In late 1969, plaintiff and officials of defendant International Harvester (hereinafter referred to as IH) discussed the possibility of plaintiff's acquiring Truck Sales as a so-called IH codealership. In a codealership arrangement, IH invests part of the initial capital with the agreement that the individual dealer can purchase IH's interest from his share of the dealership's profits.

In July, 1970, plaintiff submitted an application to IH to obtain a codealership in Crystal Lake, Illinois. Plaintiff was to invest $50,000 and IH $150,000 in the proposed corporation. In September, 1970, plaintiff's application was approved. On October 7, 1970, a new corporation, defendant Crystal Lake Transportation Sales, Inc. (hereinafter referred to as Transportation Sales), was incorporated as a Delaware corporation to conduct the business of plaintiff's codealership. On that same date, plaintiff and six IH employees were elected to the board of directors of Transportation Sales. On November 6, 1970, at the first organizational meeting of the board of directors, plaintiff was elected president and

charged with the general management of the codealership. During the meeting plaintiff made his financial investment of $50,000 and received 500 shares of Class B nonvoting stock. IH invested $150,000 and received 1500 shares of Class A voting stock.

By February, 1973, Transportation Sales had accumulated a substantial operating deficit. A majority of the board of directors voted to initiate voluntary liquidation of the corporation. Plaintiff requested the liquidation be postponed long enough for him to seek financing to buy out IH's interest in the business, and a majority of the board of directors agreed. Plaintiff approached two prospective investors but could not interest them in the dealership. Thereafter, plaintiff discussed his business problems with an attorney, who was a friend of his. After discussion with his attorney, plaintiff resigned as president of Transportation Sales, notified the board of directors that he wished to rescind his investments in the company, and on April 24, 1973, brought an action for rescission against Transportation Sales and IH. Plaintiff sought to rescind his investment on the grounds the 500 shares of stock he purchased were not registered with the Illinois Secretary of State and were not properly qualified for any exemption from registration. The trial court rendered summary judgment for defendants on the alternative grounds that (a) plaintiff was barred from rescinding his investment because he was an officer and director of the corporation at the time he purchased the stock; and (b) the sale of the stock was exempt from registration pursuant to the preincorporation exemption of section 4M of the Securities Law of 1953.

The plaintiff contends the trial court erred in granting summary judgment in favor of the defendants. In support of his contention, plaintiff relies on the decision in *Hendricks v. Deterts* (1973), 13 Ill.App.3d 976, 978, wherein the appellate court stated:

> "Summary judgment is a drastic method of disposing of litigation and the right of a party to invoke that drastic remedy must be free from doubt. [Citation.] Summary judgment has as its purpose a determination of whether or not there is any genuine triable issue of fact which must be passed upon. If the pleadings, discovery depositions, and the exhibits present a genuine issue as to any material fact, summary judgment should not be granted."

Plaintiff maintains genuine issues of material fact existed in the case at bar and defendants' motion for summary judgment should have been denied.

■■ We believe the trial court properly granted defendants' motion for summary judgment. A review of the record in the instant case reveals the plaintiff did not seek to rescind his investment in the corporation until nearly 2½ years after his purchase of the stock, at a time

when a majority of the board of directors had decided to liquidate the corporation because of its losses, and after plaintiff had been unable to obtain outside financing to buy out IH's interest in the company. Moreover, the plaintiff does not allege the defendants were guilty of any fraud or misrepresentation or any act or omission that was relied upon by plaintiff. Plaintiff merely asserts his purchase of stock violated the Securities Law because no report of sale was filed with the Secretary of State's office.

Plaintiff cannot rely upon the above assertion, however, because he was an officer and director of the corporation at the time he purchased the stock and at the time the report of sale was due to be filed. The certificate of incorporation of Crystal Lake Transportation Sales, Inc., establishes that plaintiff was elected to the board of directors on October 7, 1970. He was elected president of the company at the first organizational meeting of the board of directors on November 6, 1970. During the meeting plaintiff made his financial investment and was issued 500 shares of stock. It is therefore uncontested that at the time the stock was issued to him, plaintiff was both an officer and director of the corporation.

Section 4G of the Securities Law (Ill. Rev. Stat. 1973, ch. 121½, § 137.4G) provides essentially that sales of stock to 25 or fewer persons within a 12-month period are exempt from the registration requirements of the Securities Law provided the issuer files a report of sale with the Secretary of State not later than 30 days after the sale. Plaintiff, as president of the newly formed corporation, was charged with the general management of the company. As president, it became incumbent upon him to see that the report was filed within the 30-day period. Plaintiff failed to exercise this corporate duty for nearly 2½ years. Section 13 of the Illinois Securities Law (Ill. Rev. Stat. 1973, ch. 121½, § 137.13) provides in part that whenever a corporation's stock is sold in violation of the statute, each of the corporation's officers and directors "* * * who shall have participated or aided in making such sale, shall be jointly and severally liable to such purchaser * * *." The above language leads to the inescapable conclusion that a corporate officer or director who purchases stock in his corporation that is issued in violation of the Securities Law may not rescind that purchase some 2½ years later merely because the investment proves unprofitable.

Although there are no Illinois cases directly on point with the facts in the present case, the Supreme Court of Georgia, in *Nash v. Jones* (1968), 224 Ga. 372, 162 S.E.2d 392, has held a plaintiff who was an officer and director at the time of an alleged Securities Law violation cannot later make a claim for rescission. In *Nash*, the Georgia statute provided in terms virtually identical with section 13 of the Illinois Securities Law

that "every director, officer, salesman or agent of or for such seller who shall have participated or aided in any way in making such sale, shall be jointly and severally liable to such purchaser." Likewise in *Nash,* the plaintiff attended the first organizational meeting and was elected an officer and director, as was plaintiff in the present case. After the organizational meeting, plaintiff purchased stock in the corporation. He subsequently sued to recover his investment. It was stipulated that the stock was issued in violation of the Securities Law. The Georgia Supreme Court held the language of the statute barred plaintiff from basing a claim for rescission upon a violation of the Securities Law. The court held that although plaintiff was both a purchaser and a corporate officer and director, "it is his position in the corporation at the time of the stock issuance that must be considered in determining whether he can recover."

Also on point with the present case is *Moore v. Manufacturers Sales Co.* (1953), 335 Mich. 606, 610, 56 N.W.2d 397, 399, wherein plaintiff invested in a closely held corporation and was elected an officer and director. Subsequently he sought to rescind his investment, alleging his stock had been issued in violation of the Michigan Securities Law. The provision of the Michigan statute under which plaintiff sued was substantially the same as section 13 of the Illinois Securities Law, providing that "every agent of or for such seller who shall have participated or aided in any way of making such sale, shall be jointly or severally liable to such purchaser." The Supreme Court of Michigan, in barring plaintiff from recovering his investment, stated:

> "When plaintiff became an officer it became incumbent upon him to see that no stock was sold without compliance with the blue sky law."

In the present case, plaintiff was charged with the requirements and laws to be followed in the management of an ongoing corporation. Plaintiff failed to comply with the requirements of the Illinois Securities Law, not only within the 30-day period in which reports of sales should be filed, but for nearly 2½ years, until his business venture had failed. Plaintiff cannot now invoke section 4G of the Securities Law to rescind his investment. In the recent decision of *Burke v. Zipco Oil Co.* (1974), 19 Ill.App.3d 909, 913, this court emphasized:

> "We believe that the Securities Law serves a useful purpose and should be construed liberally in this light; however, it is intended to function as a shield for the innocent and not a sword for the investor who, because of the speculative nature of the venture or his own poor business judgment, fails to reap the expected return on his investment."

For the reasons stated herein, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

BURMAN and ADESKO, JJ., concur.